Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORCHARD, HILTZ & McCLIMENT, INC.,
a Michigan corporation,

Plaintiff,

Case No: 2:14-cv-11902

-vs-

HON. MARIANNE O. BATTANI

PHOENIX INSURANCE COMPANY
a foreign corporation, and
FEDERATED MUTUAL INSURANCE COMPANY,
a foreign corporation,

Defendants.

***Thomas, DeGrood & Witenoff, P.C.***
GREGORY I. THOMAS (P32488)
MICHAEL F. HEALY (P62382)
Attorneys for Plaintiff
400 Galleria Officentre, Suite 550
Southfield, MI 48034
(248) 353-4450; (248) 353-4451 – fax
gthomas@thomasdegrood.com
mhealy@thomasdegrood.com

***Gregory & Meyer, P.C.***
MICHELE A. CHAPNICK (P48716)
Attorneys for Defendant **Phoenix Insurance**
340 East Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920; (248) 689-4560 – fax
mchapnick@gregorylaw.com

***Garan Lucow Miller, P.C.***
MEGAN K. CAVANAGH (P61978)
JOHN J. GILLOOLY (P41948)
Attorneys for Defendant **Federated Mut. Ins.**
1000 Woodbridge Street
Detroit, MI 48207
(313) 446-1530
mcavanagh@garanlucow.com
jgillooly@garanlucow.com

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56(a) AGAINST DEFENDANT PHOENIX INSURANCE COMPANY



NOW COMES Plaintiff, ORCHARD, HILTZ & MCCLIMENT, INC. ("OHM"), by and through its attorneys, Thomas, DeGrood & Witenoff, P.C., and moves this Honorable Court pursuant to Fed. R. Civ. P. 56(a) for summary judgment in its favor and against Defendant PHOENIX INSURANCE COMPANY ("Phoenix"), with a finding that there is no genuine issue as to a material fact and that Plaintiff is entitled to judgment as a matter of law. In further support of said motion, Plaintiff relies upon its Brief filed contemporaneously herewith.

Plaintiff's counsel has conferred in good faith with counsel for Phoenix. Concurrence in the relief sought was requested and denied, and it has become necessary to file this motion.

**THOMAS, DeGROOD & WITENOFF, P.C.**

By: /s/ Michael F. Healy
Attorneys for Plaintiff
400 Galleria Officentre, Suite 550
Southfield, MI 48034
(248) 353-4450
mhealy@thomasdegrood.com
P62382

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

## CONCISE STATEMENT OF ISSUES

**IS PLAINTIFF ORCHARD, HILTZ & MCCLIMENT AN ADDITIONAL INSURED UNDER THE GENERAL LIABILITY POLICY OF INSURANCE ISSUED BY PHOENIX INSURANCE COMPANY TO A.Z. SHMINA?**

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

## CONTROLLING AUTHORITIES

*Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 448 Mich. 395, 424-425, 531 N.W.2d 168, 182, 1995 Mich. LEXIS 354, 44 (Mich. 1995)

*Auto-Owners Ins. Co. v. Churchman,* 440 Mich. 560, 567, 489 N.W.2d 431, 434, 1992 Mich. LEXIS 2168, 7 (Mich. 1992)

*Dochod v Central Mutual Ins Co,* 81 Mich. App. 63; 264 N.W.2d 122 (1978)

*GAF Sales & Serv. v. Hastings Mut. Ins. Co.*, 224 Mich. App. 259, 261, 568 N.W.2d 165, 167, 1997 Mich. App. LEXIS 222, 2-3, Copy. L. Rep. (CCH) P27,678 (Mich. Ct. App. 1997)

*Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172, 534 N.W.2d 502, 510, 1995 Mich. LEXIS 1420, 24, 62 A.L.R.5th 819 (Mich. 1995)

*Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010)

*O'Neal v. St. John Hosp. & Med. Ctr.,* 487 Mich. 485, 496, 791 N.W.2d 853, 858, 2010 Mich. LEXIS 1661, 12 (Mich. 2010)

*Peterson v. Discover Prop. & Cas. Ins. Co.*, 2015 Mo. App. LEXIS 13, 24 (Mo. Ct. App. Jan. 13, 2015)

*Western Casualty & Surety Group v Coloma Twp,* 140 Mich. App. 516, 520-521; 364 N.W.2d 367 (1985)

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 356 (unabridged 1993)





Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56(a) AGAINST DEFENDANT PHOENIX INSURANCE COMPANY

## INTRODUCTION

This case is a declaratory judgment action. Plaintiff is seeking a declaration that Defendant Phoenix Insurance Company owes a duty to defend and indemnify OHM as an additional insured under a general liability policy of insurance. The general liability policy of insurance ("policy") in question was issued to Phoenix's named insured, A.Z. Shmina ("AZS"). Phoenix's duty to defend and indemnify OHM as an additional insured extends to two underlying bodily injury lawsuits (collectively, "underlying lawsuits"). One of the underlying lawsuits is a wrongful death claim filed by *Susan Koch, as Personal Representative of the Estate of Michael Koch, deceased* ("Koch"). The second underlying lawsuit is a bodily injury claim filed by *David McBride* ("McBride"). OHM is a defendant in the underlying lawsuits.

The underlying lawsuits arise out of an explosion that occurred during the construction of the Village of Dexter Wastewater Treatment Plant improvement project. Phoenix's named insured, AZS, contracted with Village of Dexter as the general contractor for the project. In its contract with Village of Dexter, AZS agreed to purchase such insurance as would protect OHM from claims arising out of the work to be performed by AZS.





The Phoenix policy includes a Blanket Additional Insured Endorsement. The endorsement provides, in pertinent part, that "Who is an Insured" under the policy is amended to include any person or organization that its named insured (i.e., AZS) agrees in a "written contract requiring insurance" to include as an additional insured. In the present case, AZS agreed in a "written contract requiring insurance" to include OHM as an additional insured on its general liability policy. Furthermore, all other requirements for OHM to qualify as an additional insured have been satisfied. Therefore, Phoenix owes OHM a duty to defend and indemnify it against the allegations in the underlying lawsuits.

## STATEMENT OF FACTS

Phoenix issued a general liability policy of insurance to AZS. **Ex. 1, certified policy, bates #1-143.** OHM asserts that it qualifies as an additional insured under that policy pursuant to the Blanket Additional Insured Endorsement contained within the policy. *Id.*, Endorsement, pp. 58-59. In pertinent part, the endorsement provides:

> "1. WHO IS AN INSURED - (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
> a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
>
> b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the

Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



> performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization."

The Blanket Additional Insured Endorsement also contains a clause relating to other insurance available to an additional insured. *Id.,* p. 58, par. 3.

Phoenix's named insured, AZS, entered into a written contract with Village of Dexter ("Agreement"). **Ex. 2, Dexter/AZS Agreement.** Pursuant to that Agreement, AZS, as Contractor, was to "complete all Work as specified or indicated in the Contract Documents". The Work, as generally described in the Agreement, "consists of improvements to the existing anaerobic digester and sludge storage tanks, including removal and replacement of the tank covers…" *Id.,* p. 1, par. 1.01. OHM is identified in the Agreement as the Owner's representative with all rights assigned to the Engineer in the Contract Documents. *Id.,* par. 3.01.

The Contract Documents include, but are not limited to, the Agreement; General Conditions; Supplementary General Conditions; and, Insurance Requirements. *Id.,* p. 4 of 6, par. 8.01(A)(1), 5, 6, and 7. The General Conditions set forth Contractor's Responsibilities. **Ex. 3, General Conditions, Article 6, pp. 17-26.** AZS, as Contractor, "shall be solely responsible for the means, methods, techniques, sequences, and procedures of construction". *Id.,* p. 17 of 49, par. 6.01(A). AZS, as Contractor, "shall be fully responsible to Owner and Engineer for all acts and omissions of the Subcontractors, Suppliers, and other individuals or



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



entities performing or furnishing any of the Work just as Contractor is responsible for Contractor's own acts and omissions". *Id.*, p. 20 of 49, par. 6.06(C).

The Supplementary General Conditions amended the General Conditions to add into the Contract the Insurance Specification, Section 00 80 00. **Ex. 4, Supplementary Conditions, p. 2 of 4, par. SGC-5.** The Insurance Specification, Section 00 80 00, provides in pertinent part as follows:

> "2.1. Insurance Required of the CONTRACTOR:
>
> Prior to commencement of work, the CONTRACTOR shall purchase and maintain during the term of the project such insurance as will protect him, the OWNER(s), and Orchard, Hiltz &McCliment, Inc., Consulting Engineers, from claims arising out of the work described in this Contract and performed by the CONTRACTOR subcontractor(s) or sub-subcontractor(s) consisting of:
>
> * * *
>
> 2.1.2. A Comprehensive General Liability policy to cover bodily injury to persons other than employees …" **Ex. 5, Insurance Specification, 00 80 00, pp. 1 & 2 of 5, pars. 2.1 & 2.1.2.**

Plaintiff submitted its First Request for Admission to Phoenix. **Ex. 6, First Request for Admission.** In its Request, Plaintiff requested that Phoenix admit that Insurance Specification 00 80 00 is a "written contract requiring insurance". *Id.*, p. 6, RFA No. 3. Plaintiff also requested that Phoenix admit that Insurance Specification 00 80 00 is an agreement by AZS to include OHM as an Additional Insured under its General Liability policy. *Id.*, No. 4. Phoenix responded to



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suire 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

Plaintiff's request for admissions. **Ex. 7, Phoenix Response to RFA.** In its responses, Phoenix admitted that the Insurance Specification is a "written contract requiring insurance", assuming that the Specification formed part of AZS's contract. *Id.,* p. 6, RFA No. 3. Phoenix further responded that, assuming the Insurance Specification is part of AZS's contract and that the contract was signed prior to the accident, Phoenix admitted that the Insurance Specification requires the "Contractor" to include OHM as an additional insured. *Id.,* RFA No. 4.

*David McBride* filed a bodily injury complaint against AZS and OHM and Platinum Mechanical. **Ex. 8, McBride complaint.** McBride alleges that his lawsuit:

> "… arises out of an explosion that occurred on April 22, 2013, at the Dexter Wastewater Treatment Plant. At the time of the explosion, Plaintiff DAVID McBRIDE was working on top of a 'digester,' which is a large tank with a floating lid. As directed, Plaintiff DAVID McBRIDE was using a torch to cut bolts off the subject digester lid so the lid could be removed and then scrapped. Unknown to Plaintiff DAVID McBRIDE, and amongst myriad other catastrophic failures, the Defendants failed to purge sewage and methane gas from the subject digester. The torch ignited the methane gas and caused an explosion. Plaintiff DAVID McBRIDE was launched into the inside rim of the digester…" *Id.,* pp. 2-3, par. 1.

*McBride* further alleges that OHM negligently breached duties allegedly owed to plaintiff in a myriad of different ways. *Id.,* pp. 35-39, par. 53 (a) – (iii). For examples, *McBride* alleges that OHM negligently breached its duties by:

* * *



> "i. failing to make certain that the subject digester had been properly purged of all sewage, waste water, methane, and methane producing byproducts prior to salvaging operations performed by Regal Recycling, Inc.;
>
> * * *
>
> q. failing to continuously purge tanks, lines and systems of explosive gas and methane;
>
> * * *
>
> qq. failing to develop and specify the means, procedures, and practices necessary for safe permit space entry operations, including, but not limited to: specifying acceptable entry conditions; observe any monitoring or testing of pennit spaces; isolating the permit space; purging, inerting, flushing, or ventilating the permit space as necessary to eliminate or control atmospheric hazards; verifying that conditions in the permit space are acceptable for entry throughout the duration of an authorized entry;" *Id.*, pp. 36 & 38, par. 53 (i), (q) (qq).

*Susan Koch, as Personal Representative of the ESTATE OF MICHAEL KOCH, deceased* filed a wrongful death complaint against AZS and OHM and Regal Rigging. **Ex. 9, Koch complaint.** The complaint alleges that Michael Koch was killed by an explosion at the Dexter WWTP on April 22, 2013 "as a direct and proximate result of the negligent acts and omissions of each of the named Defendants". *Id.*, p. 1, par. 1. *Koch* further alleges that OHM negligently breached duties allegedly owed to plaintiff in a myriad of different ways. *Id.*, pp. 26-29, par. 107 (a) – (jj). For examples, *Koch* alleges that OHM negligently breached its duties by:

* * *

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

"e. failing to develop, maintain, and implement an accident prevention program,
including a confined space program, and coordinate these programs with all supervisors, employees, and subcontractors;

*    *    *

m. failing to prevent and stop welding operations and torch cutting operations in an area with explosive gases present;

*    *    *

gg. failing to develop and implement the means, procedures, and practices necessary for safe permit space entry operations, including, but not limited to: specifying acceptable entry conditions; observe any monitoring or testing of permit spaces; isolating the permit space; purging, inerting, flushing, or ventilating the permit space as necessary to eliminate or control atmospheric hazards; verifying that conditions in the permit space are acceptable for entry throughout the duration of an authorized entry;" *Id.*, pp. 26, 27 & 29, par. 107 (e), (m) & (gg).

OHM made demands upon Phoenix to provide it with additional insured coverage against the *Koch* and *McBride* complaints. **Ex. 10, demand letters.**

Mr. James Didusch testified as a corporate designee for Phoenix pursuant to Fed. R. Civ. P. 30(b)(6). **Ex. 11, Didusch deposition transcript, pp. 11-12.** He was the decision maker in regard to OHM's request for additional insured coverage. He did not make a decision in that regard prior to litigation. *Id.*, pp. 41-2. He received the letters sent on behalf of OHM requesting additional insured coverage. He could not state specifically or generally that Phoenix was prejudiced



by not receiving the demand letters earlier. *Id.*, pp. 30-33. Phoenix did not respond to the demand letters. *Id.*, p. 37.

Mr. Didusch agreed the requirement contained in the Blanket Additional Insured that there be in place a "written contract requiring insurance" had been met in this case. *Id.*, pp. 61-63. Mr. Didusch further acknowledged that assuming the Insurance Specification is part of the contract, and the contract was signed before the accident, Phoenix agrees that OHM would be considered an additional insured, with some other qualifications. *See* Ex. 11, pp. 66-7. *See also,* Ex. 7, pp. 4-5, Answer to Interrogatory No. 1. Mr. Didusch identified the signed Agreement between AZS and Dexter. *Id.*, pp. 71-2; *See* Ex. 2, AZS signed agreement with Dexter. Mr. Didusch agreed that the contract between AZS and Village of Dexter was executed before the loss. *See* Ex. 11, p. 68. Mr. Didusch agreed that the *Koch* and *McBride* complaints against OHM seek damages for bodily injury. *Id.*, p. 69.

Mr. Didusch explained his general understanding of the how the underlying accident occurred as follows:

> "Q. Did you gain a general understanding as to how the
> underlying accident happened?
>
> A. Yes.
>
> Q. What is your general understanding?
>
> A. My general understanding is that there were two
> digester tanks. Representatives of OHM, Shmina,
> possibly someone with Dexter, were located on one of

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



the tanks. A representative of Regal, a subcontractor to Platinum, was on another tank and there were steel-cutting operations being performed on the other tank.
My understanding is that they were warned, told to get off the tank. They did vacate, came back again and started cutting again. It was either the second or third time they were warned when the explosion took place on the tank where the OHM and Shmina employees were not located. It was -- I remember one was primary and secondary but I don't know which tank was which but there were two tanks.

Q. And when you say explosion, did you have -- did you gain a general understanding as to what the explosion was?

A. It was my understanding that it involved a methane gas explosion.

Q. Did you gain a general understanding as to how the methane gas ignited?

A. Based on what I knew at that time, it was associated with the steel-cutting operations being performed by Regal.

Q. And when you use the term Regal, is that Regal Rigging?

A. Yes, it would be the sub to Platinum."

**Ex. 11**, pp. 23-4.

Mr. Didusch's general understanding was that the work being performed at the time of the explosion was the cutting on the cover of one of the digesters with a torch. He further agreed that the Work to be performed by AZS included the removal and replacement of the tank covers. He further agreed that the work being

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

performed by the Regal Rigging employee at the time of the explosion was on one of the tank covers. Based on his general understanding as to how the accident occurred and the contract between AZS and Dexter, Mr. Didusch agreed that the Work of AZS included the work being performed by Regal at the time of the explosion. Ex. 11, pp. 74-5. Mr. Didusch agreed the work being performed by the Regal Rigging employee at the time of the occurrence was a construction means, methods and techniques. *Id.,* p. 94.

In regard to the underlying project, AZS sub-contracted with Platinum Mechanical. **Ex. 12 – Platinum Mechanical sub-contract.** Platinum Mechanical was to provide "All Labor and Materials for Specifications: Demo, Digester Cover Installation Work". *Id.,* p. 1, par. 1. Exhibit A to Platinum's subcontract with Shmina further delineates that Platinum's scope of work included "remove existing covers". *Id.,* Exhibit A – Subcontractor Work. Platinum Mechanical then sub-contracted with David McBride's employer, Regal Rigging. **Ex. 13 – Regal Rigging letter of intent.** The work to be performed by Regal Rigging "include removal of both lids from the digester tanks and all associated concrete and steel, labor to perform work, and all insurances necessary". *Id.*

The deposition of John Franklin was taken July 29, 2014. (**Ex. 14 – John Franklin deposition transcript**). John Franklin has worked for AZS for thirty years. *Id.,* p. 6. He has been in the position of Superintendant for AZS for twenty-





five years. *Id.*, p. 8. As the Superintendant his job is day-to-day supervision of the job. *Id.*, p. 13. Mr. Franklin testified that on the morning of the occurrence there was no sewage in the primary digester but he was aware there was sewage in the secondary digester (i.e., the digester McBride was standing on when the explosion occurred). *Id.*, pp. 16, 20. Mr. Franklin observed David McBride using a cutting torch on the secondary digester. He asked the Platinum Mechanical supervisor, Jeremy Cook, to find out why David McBride was cutting on the secondary digester and to ask him to stop because he was to be working on the primary digester. *Id.*, pp. 34-35. Mr. Franklin then saw David McBride continue to cut the side rails to the secondary digester. Mr. Franklin told David McBride to stop working on the secondary digester because there was methane gas and it was dangerous. *Id.*, pp. 35-36. Mr. Franklin testified that he did not again see Mr. McBride cutting on the secondary digester after he told him to stop. Mr. Franklin was standing on the roof between the primary and secondary digesters at the time of the explosion. *Id.*, pp. 37-40.

The deposition of Jeremy Cook was taken September 23, 2014. (**Ex. 15 – Cook deposition transcript**) Mr. Cook has been with Platinum for twelve years as a job foreman. *Id.*, p. 8. He was present at the WWTP on the day of the incident. *Id.*, p. 9. Platinum was contracted to perform plumbing and pipefitting and also the demolition and reconstruction of the two digester lids. *Id.*, p. 10. On the morning of

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



the incident, Mr. Cook observed McBride using a torch to cut rails off the secondary digester. *Id.,* pp. 22-23. Mr. McBride was not to be working on the secondary digester; therefore, Mr. Cook stopped him and asked what he was doing. *Id.,* pp. 24-25. Mr. Cook told Mr. McBride there was sludge in the digester and a concern of methane gas. *Id.,* pp. 38-39. Mr. Cook had with him a "sniffer" to detect explosive gases. *Id.,* pp. 39-40. Mr. Cook used the sniffer to test for gases in the primary digester but did not test the secondary digester. *Id.,* p. 40. Mr. Cook was aware of harmful gases in the secondary digester and that is why he stopped Mr. McBride and made them aware of his concern about no fire protection. *Id.,* p. 49. After telling Mr. McBride to stop cutting on the secondary digester, Mr. Cook did not see Mr. McBride cutting on the secondary digester again before the accident. *Id.,* p. 66.

The deposition of David McBride was taken June 17, 2015. **Ex. 16, McBride deposition transcript.** Mr. McBride testified that Jeremy Cook from Platinum Mechanical told him to cut the bolts off the center hub of the secondary digester. *Id.,* p. 36. The deposition of Darrell Thorton was taken January 5, 2015. **Ex. 17, Thorton deposition transcript.** Mr. Thorton testified that John Franklin of AZS told David McBride the morning of the incident to cut the bolts off of the center hub of the secondary digester because they "couldn't get them broke loose with the impact or torque wrench." *Id.,* pp. 30-31.



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

## STANDARD OF REVIEW

Ordinarily, The Court of Appeals reviews a district court's grant of summary judgment de novo. *Trs. of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 247-48 (6th Cir. 2005).Summary judgment is proper where the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ARGUMENT

The construction and interpretation of an insurance contract is a question of law for a court to determine. *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 353, 596 N.W.2d 190, 193, 1999 Mich. LEXIS 1870, 6 (Mich. 1999). To determine whether an insured is entitled to insurance benefits, the court employs a two-part analysis. "First, [the court determines] if the policy provides coverage to the insured. If it does, [the court then ascertains] whether that coverage is negated



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

by an exclusion." *Buczkowski* v *Allstate Ins Co,* 447 Mich 669, 682; 526 N.W.2d 589 (1994). It is the insured's burden to establish that his claim falls within the terms of the policy. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172, 534 N.W.2d 502, 510, 1995 Mich. LEXIS 1420, 24, 62 A.L.R.5th 819 (Mich. 1995). Conversely, the insurer must prove that an exclusion to coverage is applicable. *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 448 Mich. 395, 424-425, 531 N.W.2d 168, 182, 1995 Mich. LEXIS 354, 44 (Mich. 1995) Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Auto-Owners Ins. Co. v. Churchman,* 440 Mich. 560, 567, 489 N.W.2d 431, 434, 1992 Mich. LEXIS 2168, 7 (Mich. 1992).

It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify. To determine whether an insurer has a duty to defend its insured; the Court looks to the language of the insurance policy and construes its terms to find the scope of the coverage of the policy. An insurer has a duty to defend if the allegations of the underlying suit arguably fall within the coverage of the policy. *GAF Sales & Serv. v. Hastings Mut. Ins. Co.*, 224 Mich. App. 259, 261, 568 N.W.2d 165, 167, 1997 Mich. App. LEXIS 222, 2-3, Copy. L. Rep. (CCH) P27,678 (Mich. Ct. App. 1997) Further, an insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v*





*Central Mutual Ins Co,* 81 Mich. App. 63; 264 N.W.2d 122 (1978). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch on Insurance 2d, § 51:45, p 538. [*Western Casualty & Surety Group v Coloma Twp,* 140 Mich. App. 516, 520-521; 364 N.W.2d 367 (1985), quoting with approval *Detroit Edison Co v Michigan Mut Ins Co,* 102 Mich. App. 136, 141-142; 301 N.W.2d 832 (1980).]

**OHM IS AN ADDITONAL INSURED UNDER THE BLANKET ADDITONAL INSURED ENDORSEMENT**

In summary fashion, in order for an entity to qualify as an additional insured under the Blanket Additional Insured Endorsement, there must be (1) a "written contract requiring insurance"; (2) liability for "bodily injury"; and (3) injury caused by acts or omissions of the named insured (i.e., AZS), or its subcontractor in the performance of "your work" to which the "written contract requiring insurance applies". Ex. 1, Endorsement, pp. 58-59, par. 1 (a) & (b).

**OHM has established a "written contract requiring insurance"**

The Phoenix policy includes a definition for "written contract requiring insurance". Ex. 1, Endorsement, p. 59, par. 5. In the present case, the definition has been satisfied because the Insurance Specification required AZS to include OHM as additional insured; the bodily injury occurred prior to execution of the contract while the contract was still in effect; and, before the end of the policy period.



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Furthermore, Phoenix and Mr. Didusch acknowledged that in the present case there exists a "written contract requiring insurance".

**OHM has established that the *Koch* and *McBride* complaints seek "liability for 'bodily injury'"**

The second Endorsement requirement that additional insured coverage will extend only with respect to "liability for 'bodily injury'" has clearly been satisfied in the present case. The policy defines "bodily injury" as bodily injury sustained by a person, including death resulting there from at any time. Ex. 1, Commercial General Liability Coverage Form, p. 12 of 16, Section V – Definitions, par. 3, Bates #32. Mr. Didusch acknowledged that point and a review of the complaints establishes that requirement beyond dispute.

**OHM has established an injury "caused by acts or omissions of you or your subcontractor in the performance of 'your work' to which the 'written contract requiring insurance applies'"**

The policy provides that throughout the policy the words "you" and "your" refer to the Named Inured shown in the Declarations. Ex. 1, Commercial General Liability Coverage Form, p. 1 of 16, Bates #21. The policy defines "your work" as "Work or operations performed by you (i.e., AZS) or on your (i.e., AZS') behalf" and includes the "providing of or failure to provide warnings or instructions". *Id.*, pp. 15 & 16 of 16, pars. 22(a)(1) & (b)(2), Bates #35-36.

In the present case, the Endorsement requirement that the act or omission be by "you" (i.e., Shmina) is clearly satisfied by reference to *Koch* and *McBride*



Thomas DeGrood & Witenoff 400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

complaints. Furthermore, the endorsement requirement that the act or omission be by "your subcontractor" (i.e., AZS's direct subcontractor Platinum) is clearly satisfied by reference to *Koch* and *McBride* complaints. The policy does not define "your subcontractor". Consequently, the phrase "your subcontractor" is ambiguous in light of the definition of "your work". The term "your subcontractor" could be interpreted to be limited to direct subcontractors, but the term "your work" is not limited to a direct subcontractor, and, instead, only requires that the Work be performed on behalf of AZS. In this case, it is clear that Regal Rigging was performing Work on behalf of AZS. Since the term "your subcontractor" is ambiguous it must be construed in favor of OHM to include Regal Rigging as an AZS subcontractor. Again, this requirement is clearly satisfied by reference to *Koch* and *McBride* complaints.

Lastly, the requirement that OHM, in this particular case, is an additional insured only with respect to liability for bodily injury "caused by" the acts or omissions of Shmina or its subcontractors has also been satisfied. In this regard, the *Koch* and *McBride* complaints both allege that Shmina and its subcontractors caused the injuries alleged in the complaints. Therefore, at the very least, Phoenix owes OHM a duty to defend it against the allegations of those complaints.

Furthermore, in *Peterson v. Discover Prop. & Cas. Ins. Co.*, 2015 Mo. App. LEXIS 13, 24 (Mo. Ct. App. Jan. 13, 2015), the court was faced with interpreting





Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

the term "caused" in an additional insured endorsement involved in that case. The court noted that the term "cause" or "caused" was not defined in the policy involved in that policy. Therefore, the court determined that it was necessary to use the ordinary meaning as set forth in the dictionary. *See Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010) ("Courts may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement.") The court noted that "Cause" as a verb means "to serve as cause or occasion of: bring into existence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 356 (unabridged 1993). *Id.* The court then concluded "there is no hint from Webster's definition and the common-sense reading of the word 'cause' that a pre-determination of fault or negligence or liability must exist prior to coverage taking effect. *Id.* at p. 25. Instead, the court concluded that if the insurer in that case had intended to limit coverage only to cases where there was a pre-determined finding of liability (rather than mere "but for" causation) it could have done so. *Id.* at p. 28.

Similarly, in the present case, the Phoenix policy does not define "caused by". Therefore, a common sense dictionary definition of the term applies. As the court in *Peterson, supra,* concluded in that case, there is there is no hint from Webster's definition and the common-sense reading of the term "caused by" that a pre-determination of fault or negligence or liability must exist prior to coverage





taking effect under the Phoenix additional insured endorsement at issue in this case. Instead, the common sense interpretation of the term is that only "but for" causation is required to trigger coverage. In the present case, the allegations of the *Koch* and *McBride* clearly establish "but for" causation by Shmina and its subcontractors.

In *O'Neal v. St. John Hosp. & Med. Ctr.,* 487 Mich. 485, 496, 791 N.W.2d 853, 858, 2010 Mich. LEXIS 1661, 12 (Mich. 2010), the Michigan Supreme Court explained that the proper interpretation of proximate causation in a negligence action is well-settled in Michigan. In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct. These two prongs are respectively described as "cause-in-fact" and "legal causation." While legal causation relates to the foreseeability of the consequences of the defendant's conduct, the cause-in-fact prong "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." In the present case, the Phoenix policy does not require a showing of "proximate causation". Instead, the policy only requires a showing of "causation", which is a "cause-in-fact" or "but for" standard that has been meet in the present case.

Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com





Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

## CONCLUSION

Wherefore, Plaintiff Orchard, Hiltz & McCliment prays this Honorable Court pursuant to Fed. R. Civ. P. 56(a) for summary judgment in its favor and against Phoenix Insurance Company with a finding that there is no genuine issue as to a material fact and that Orchard, Hiltz & McCliment is entitled to judgment as a matter of law.

**THOMAS, DeGROOD & WITENOFF, P.C.**

By: /s/ Michael F. Healy
Attorneys for Plaintiff
400 Galleria Officentre, Suite 550
Southfield, MI 48034
(248) 353-4450
mhealy@thomasdegrood.com
P62382



Thomas DeGrood & Witenoff
400 Galleria Officentre, Suite 550, Southfield, MI 48034 Phone 248.353.4450 Fax 248.353.4451 www.thomasdegrood.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2015, Sheila Bodenbach electronically filed ***Motion for Summary Judgment Pursuant to FRCP 56(a) Against Defendant Phoenix Insurance Company*** on behalf of Plaintiff with the Clerk of the Court using the ECF system, which will automatically send notification of such filing to all attorneys of record.

**THOMAS, DeGROOD & WITENOFF, P.C.**

By: /s/ Michael F. Healy
Attorneys for Plaintiff
400 Galleria Officentre, Suite 550
Southfield, MI 48034
(248) 353-4450
mhealy@thomasdegrood.com
P62382

